# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. WEBCO INDUSTRIES, INC. | ) |
| | ) |
| **Plaintiff,** | ) |
| v. | ) |
| | ) |
| 1. RICHARDS KELLY DIAMOND, an individual, | ) Case No. 11-CV-774-JHP-FHM |
| | ) |
| 2. ACCURATE NDT SERVICES, INC., a Florida corporation, | ) |
| | ) |
| 3. COASTAL SPECIALTY TUBE, INC., a Florida corporation | ) |
| | ) |
| **Defendants.** | ) |

## OPINION AND ORDER

Before the Court are Defendant Coastal Specialty Tube, Incorporated's (Coastal) Motion to Dismiss (Motion) and Plaintiff Webco Industries Incorporated's (Webco) Response in Opposition to Defendant's Motion to Dismiss (Response).[1] This Motion and the Response were filed in Tulsa County District Court.[2] Defendant Coastal brings its Motion pursuant to Federal Rule of Civil Procedure 12(b)(2) claiming this Court lacks personal jurisdiction over the corporation. At the direction of the Court, Defendant Coastal filed Reply brief on August 15, 2012 (Reply).[3] For the reasons detailed below, Defendant Coastal's Motion to Dismiss is **DENIED**.

---

[1] Docket No.'s 1 and 2.

[2] *Id.*

[3] Docket No. 35.

1

**BACKGROUND**

The events giving rise to this action involve an October 2009 Contract and Non-Disclosure Agreement between the individual Defendant Richard's Kelly Diamond (Diamond), a corporation wholly owned by Diamond, Defendant Accurate NDT Services, Incorporated (Accurate), and Plaintiff Webco, a corporation in the business of making seam-welded, umbilical tubes for a variety of applications.[4] Plaintiff Webco is an Oklahoma corporation, with its principal place of business in Oklahoma.[5] Diamond is a domiciliary of the state of Florida.[6] Defendant Accurate is a Florida corporation with its principal place of business in Florida.[7] At the time of filing, Defendant Coastal was a Florida start-up corporation, with no employees, no shareholders, no assets, no operations, and no sales or revenue.[8]

The Contract in question provided that Diamond and Accurate would (1) help establish an appropriate, non-destructive testing program, (2) provide consulting on various tube-making items, and (3) provide training to Webco employees at its Kellyville, Oklahoma manufacturing facility.[9] At the time of the Contract's execution, Webco and Diamond "and/or [Accurate]" entered into a "Non-Disclosure and Non-Use Agreement"(Agreement) which established definitions for "Confidential Information" and proscribed conduct related to the use and disclosure of such

---

[4]Petition at 2, Docket No. 4-1.

[5]*Id.* at 1.

[6]Affidavit of Richards Kelly Diamond at 33, ¶1, Docket No. 4-2.

[7]*Id.*

[8]*Id.* at 34.

[9]Petition at 2, Docket No. 4-1.

information.[10] The Agreement restricted conduct that might be commercially harmful to Webco and specifically prohibited Diamond and Accurate from providing technical development services to seam-welded umbilical tube manufacturers other than Webco.[11] This confidentiality requirement was a precaution to ensure that Diamond and his Accurate employees, who had access to trade secrets regarding Webco's tube-making processes, would not use that information to the detriment of Webco.[12]

At some point, Webco learned that Diamond was somehow involved in the organization and start-up of Coastal and that Coastal was to be engaged in direct competition with Webco in the specialty umbilical tube market.[13] Upon learning of Coastal, Webco immediately ceased payment of the Contract.[14] Webco alleges that, because Diamond is the president of Coastal, all confidential information disclosed to Diamond and his Accurate employees, including trade secrets, is now in the hands of a direct competitor, Coastal.[15] Plaintiff further alleges that Diamond and other Accurate employees, acting on behalf of Defendant Coastal, solicited Webco employees to join Coastal or another interim company with which Diamond and/or Accurate was affiliated.[16]

On October 17, 2011, Defendant Coastal filed "Articles of Dissolution" and a "Notice of

---

[10]*Id.* at 3.

[11]*Id.*

[12]*See id.* at 2-3.

[13]*Id.* at 5.

[14]*Id.*

[15]*Id.*

[16]*Id.*

3

Corporate Dissolution" with Florida's Secretary of State.[17] Coastal's unnamed incorporator also instructed its attorneys of record to withdraw from the representation of Coastal in this case.[18] A formal Motion to Withdraw was filed by Coastal's attorneys in this Court on February 9, 2012.[19]

## **DISCUSSION**

The purpose of allowing a jurisdictional challenge is to protect a defendant who has no meaningful contact with a state from being forced to litigate in an unfamiliar and potentially unfair forum.[20] Where, as here, an evidentiary hearing is not necessary, the plaintiff must only make a *prima facie* showing that jurisdiction is appropriate in order to overcome such challenge.[21] "The plaintiff may make this *prima facie* showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant."[22] The defendant must then present a compelling case that the exercise of jurisdiction would somehow be unreasonable.[23] At this early stage of litigation, the plaintiff's burden is light, and all doubts must be resolved in Plaintiff's favor.[24]

To establish personal jurisdiction over the defendants, the "plaintiff must show that

---

[17] *See* Motion to Withdraw at 2, docket No. 17.

[18] *Id.*

[19] *Id.*

[20] *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090 (10th Cir. 1998).

[21] *Id.* at 1091.

[22] *Id.*

[23] *Id.*

[24] *Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc*., 205 F.3d 1244, 1247 (10th Cir. 2000).

4

jurisdiction is proper under the laws of the forum state and that the exercise of jurisdiction would not offend due process."[25] "Because Oklahoma's long-arm statute permits any exercise of jurisdiction consistent with the U.S. Constitution, the personal jurisdiction inquiry . . . collapses into a single due process inquiry."[26] Due process requires "only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"[27]

The existence of minimum contacts may be based on either specific or general contacts by the Defendants. Plaintiff does not allege that Oklahoma courts may exercise general personal jurisdiction over Coastal, therefore the Court must look to specific contacts-based jurisdiction. Specific contacts-based jurisdiction requires that "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there."[28] The Court may, consistent with due process, assert specific jurisdiction over a nonresident defendant if that defendant has purposefully directed activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.[29] To qualify such activities must typically be the result of affirmative conduct which allows or promotes business within the forum

---

[25]*Id.*

[26]*Id.*

[27]*Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (*quoting Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

[28]*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

[29]*Intercon,* 205 F.3d at 1247 (*quoting Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

5

state.[30]

In this case, Plaintiff argues that Coastal is subject to specific jurisdiction based upon Diamond's activities within the Oklahoma forum. Plaintiff makes this argument under two theories: (1) that Coastal is merely an alter ego of Diamond, thus Diamond's own activities justify jurisdiction over Coastal; and (2) that Diamond, acting as President of Coastal, directed business activity in Oklahoma sufficient to invoke personal jurisdiction as to Coastal.[31]

The *alter ego* doctrine allows Court's to disregard a corporate entity and hold stockholders personally liable for corporate obligations or corporate conduct.[32] Here Plaintiff alleges that Defendant Coastal is a sham corporation, wholly owned and operated by Defendant Diamond, and as such, the Court should pierce Coastal's veil and find personal jurisdiction exists based on defendant Diamond's contacts with the forum state.[33]

Plaintiff's *alter ego* argument is somewhat premature. Defendant Diamond is a party to this suit and is not hiding behind Coastal's corporate veil in an attempt to avoid personal liability for his alleged actions. As such, Plaintiff can hold Diamond fully accountable for his alleged actions absent any veil piercing. Because Diamond, the allegedly responsible party, has already submitted to the Court's jurisdiction, piercing Coastal's corporate veil is an unnecessary exercise at this juncture and irrelevant to the Court's jurisdictional inquiry.

---

[30]*Id.*

[31]Response at 5, 8, Docket No. 2.

[32]*See Fanning v. Brown*, 2004 OK 7, ¶ 16, 85 P.3d 841, 846–47.

[33]Response at 6, Docket No. 2 ("The fact is that Coastal has come forward with no evidence, argument, or theory that Coastal is anything other than a corporate shell for Diamond to do business").

Looking to Plaintiff's specific contacts argument, although Defendant Coastal disputes that Defendant Diamond wholly owned and operated Defendant Coastal, it is undisputed that Defendant Diamond was the designated president of Coastal while Diamond was performing his duties under the Contract with Webco.[34] In this capacity, Plaintiff plainly alleges Coastal made two specific contacts: (1) Diamond's recruiting of Webco employees for Coastal; and (2) Diamond actively luring customers away from Webco.[35]

To support the recruiting allegation, Plaintiff offers the sworn affidavit of David E. Boyer, the Chief Operating Officer and Senior vice-president of Webco, that states Diamond, acting in his capacity as president or as an agent for Coastal recruited multiple Webco employees to work for Coastal.[36] Boyer specifically alleges that Diamond sought to hire Kranthi Pallegar, a Webco employee who Diamond himself had recommended Webco hire.[37] Boyer alleges that Pallegar was recruited to both work for and hold an equity interest in Defendant Coastal, and also states Pallegar was tasked with recruiting other employees to Coastal.[38] Boyer further alleges that Diamond personally made contact with one other Webco employee, with whom Diamond had no prior

---

[34] *See* Affidavit of Richards Kelly Diamond at 34,¶6, Docket No. 4-2.

[35] Defendant also cites Diamond's becoming president of Coastal as a contact relied upon by Plaintiff to establish minimum contacts. *Reply* at 4, Docket No.35. In his Response, Plaintiff is not clear as to which allegations he presumes are Coastal's "contacts" for the purposes of the jurisdictional analysis. The Court begins its jurisdictional analysis at the point Plaintiff claims Diamond was "acting on behalf of Coastal" which includes the first references to Coastal actually directing activities toward Oklahoma. Response at 9, Docket No. 2.

[36] *Affidavit of David E. Boyer at 53, ¶12, Docket No. 4-2.*

[37] *Id.*

[38] *Id.*

7

acquaintance or affiliation, in an effort to recruit that employee for Coastal's operations.[39]

These facts, accepted as true, offer that Diamond, acting as the president of Defendant Coastal purposefully directed his, and therefore Coastal's, hiring activities toward Webco's Oklahoma employees. Plaintiff also alleges that Pallegar, as an agent of Coastal, performed similar activities. From this activity, Plaintiff anticipates imminent injury, as employees would take with them to Coastal, or another corporation affiliated with Diamond, Webco's trade secrets and proprietary information related to Webco's operations. Plaintiff's allegations, accepted as true, demonstrate that Coastal, through Diamond and Pallegar, purposefully directed Coastal's employment activities in Oklahoma to Plaintiff's detriment. This suffices to establish the specific minimum contacts necessary to warrant the exercise of personal jurisdiction over Coastal by Oklahoma courts. Consequently, the Court need not address Plaintiff's weaker allegation of specific contacts related to the alleged wooing of Webco customers by Coastal.

As the Court has found specific minimum contacts, it must also determine whether "the exercise of personal jurisdiction over the defendant offends "traditional notions of fair play and substantial justice.'"[40] The inquiry here is "whether a district court's exercise of personal jurisdiction over a defendant with minimum contacts is 'reasonable' in light of the circumstances surrounding the case."[41] In determining reasonableness, the Court considers:

> [a] the burden on the defendant, [b] the forum state's interest in resolving the dispute, [c] the plaintiff's interest in receiving convenient and effective relief, [d] the interstate judicial system's interest in obtaining the most efficient resolution of

---

[39]*Id.*

[40]*OMI Holdings*, 149 F.3d at 1091 (*quoting Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 113 (1987)).

[41]*Id.*

8

controversies, and [e] the shared interest of the several states in furthering fundamental social policies.[42]

This half of the personal jurisdiction inquiry is interconnected with the minimum contacts analysis, evoking a sliding scale.[43] Generally, a weak showing by a plaintiff of minimum contacts will require a lesser showing by a defendant to evidence unreasonableness.[44] Looking first to the burden on the Defendant, the Court notes that Defendant Coastal existed as a corporate entity for an extremely short period of time and has no assets. To force it to litigate this suit in a distant forum would certainly constitute a burden on the defunct corporate entity and ultimately its attorneys.

As to the second prong, Oklahoma's interest in adjudicating the dispute, there is no question that Oklahoma has a vested interest in protecting its corporations, and therefore has an equally strong interest in resolving the instant suit in this state. This factor weighs heavily in favor of exercising personal jurisdiction over Defendant Coastal. Under the third prong, the Court must determine "whether the Plaintiff can receive convenient and effective relief in another forum."[45] Although Plaintiff could presumably receive effective relief in Florida, where Coastal is located, Defendant Coastal does not appear to seek to force Plaintiff to litigate in its Florida home. Rather, Defendant Coastal's arguments center on whether Plaintiff could receive effective relief against Coastal in any court.

Putting aside the issue of whether there is effective relief to be had, the convenience factor weighs heavily in favor of Plaintiff. Forcing Plaintiff to pursue any claims against Coastal in another

---

[42]*Id.*

[43]*Id.* at 1092

[44]*Id.*

[45]*Id.* at 1097.

forum would subject Plaintiff to significant expense for what appears at this juncture to be a marginal gain. Plaintiff has distinct claims against Coastal, but the bulk of Coastal's actions giving rise to those claims occurred in Oklahoma, and most of the evidence and witnesses remain in Oklahoma. To force Plaintiff to marshal the witnesses and evidence in another jurisdiction would be particularly onerous and not at all convenient.

The issue of evidence and witnesses also informs the fourth prong of the reasonableness analysis, the interstate judicial system's interest in obtaining efficient resolution. Generally, this factor asks whether the forum state is the most efficient place to litigate the dispute. Key to this inquiry are "the location of the witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation."[46]

There is no question that the bulk of the witnesses, the location of the wrong, and the substantive contractual law all centers on Oklahoma. Consequently, these factors all support an exercise of personal jurisdiction by Oklahoma courts. Further, the Court recognizes that severing Plaintiff's tangential claims against Defendant Coastal would unnecessarily force Plaintiff to litigate this action in a piecemeal fashion. Although this Court questions whether the Plaintiff's specific claims against Coastal can be efficiently resolved in any forum, if Plaintiff's claims against Defendant Coastal are to be tried, the Oklahoma forum best serves the interests of judicial efficiency and economy.

As to the final prong of the reasonableness analysis, the Court can foresee no impact to the shared interest of the several states in furthering fundamental social policies that would arise from

---

[46]*Id.*

this Court's exercise of personal jurisdiction over Defendant Coastal. Considering all of these factors, the Court finds an exercise of personal jurisdiction over Defendant Coastal to be reasonable.

### CONCLUSION

The Court finds that Defendant Coastal had sufficient minimum contacts with Oklahoma to warrant an exercise of personal jurisdiction over it. Further, such an exercise is reasonable and does not offend traditional notions of fair play and substantial justice. As such, an exercise of personal jurisdiction over Defendant Coastal by this Court is appropriate. Consequently Defendant Coastal's Motion to Dismiss [for Lack of Personal Jurisdiction] is **DENIED**.[47]

**IT IS SO ORDERED this 18th day of September, 2012.**

_____
James H. Payne
United States District Judge
Northern District of Oklahoma

---

[47]Docket No. 1.